**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| QUANTEL SAUNDERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 2:21-00102 |
| | ) | |
| DONALD AMES, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

Pending before the Court are the following: (1) Petitioner's Motion for Preliminary Injunction (Document No. 19), filed on May 13, 2021; and (2) Respondent's Motion to Dismiss (Document No. 26), filed on June 9, 2021. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny Respondent's Motion to Dismiss (Document No. 26), grant Petitioner's Section 2241 Petition (Document No. 1), and deny as moot Petitioner's Motion for Preliminary Injunction (Document No. 19).

1.    <u>**Case No. 17-F-26**</u>:

In January 2017, Petitioner was indicted by the Fayette County grand jury of one count of conspiracy to commit a felony (Count One), one count of murder (Count Two), and one count of robbery in the first-degree (Count Three). (Document No. 26-2.) Specifically, Petitioner was accused of conspiring with two other men to murder Franklin Borders and to rob Mr. Borders and Sabrina Gray of money and marijuana. (<u>Id.</u>) Petitioner's jury trial began on September 4, 2019.

(Document No. 26-3.) The State began presenting testimony the following day on September 5, 2019. (Id.) During a conference held on September 5, 2019, outside the presence of the jury, defense counsel requested information from a separate criminal file involving Robert Brown, Indictment No. 15-F-59, which Petitioner believed included exculpatory evidence. (Document No. 26-6.) On Friday, September 6, 2019, the State voluntarily provided Petitioner's defense counsel with the State's file on the Robert Brown case. (Id.) During the weekend, Petitioner's investigator reviewed the files related to Mr. Brown and discovered evidence relevant to Mr. Borders' death. (Document No. 26-5, p. 3.) During a conference conducted outside the presence of the jury on Monday, September 9, 2019,[1] Petitioner's defense counsel requested that the trial court dismiss the case based on the late disclosure of what Petitioner believed to be exculpatory *Brady* evidence. (Id., pp. 4 – 5.) Defense counsel explained that he received a "series of discs and thumb drives" on Friday, but had not had time to review the entire file. (Id., p. 3.) Defense counsel alleged that the files reviewed by the investigator revealed a statement by Mr. Brown that he had knowledge that Mr. Borders was killed by Jamal Calhoun and another individual from Columbus, Ohio. (Id., p. 4.) "Based on the surprise and late disclosure, and the fact that it is complete with exculpatory evidence," defense counsel requested that the case be dismissed. (Id., pp. 4 – 5.) The trial court inquired "you are asking for a dismissal, not a mistrial." (Id., p. 5.) Defense counsel responded that his "request is for a dismissal, and at the very least a continuance to allow me to investigate and to acquire some type of credentials to go interview Mr. Brown, who is in a state penitentiary." (Id.) After citing pertinent state caselaw and procedural rules, the trial court responded that "you're really looking at whether there's a mistrial or a continuance." (Id., pp. 5 - 7.) In response, both

---

[1] The record reveals that on the fourth day of the trial, it was anticipated that the State would rest that day and "maybe not even need the whole day to rest." (Document No. 26-5, p. 5.)

defense counsel and Petitioner clearly responded that they were not asking for a mistrial. (Id., p. 7.) After noting that "we're not dealing with an intentional violation of *Brady*," the trial court heard the State's arguments against dismissal. (Id., pp. 7 – 10.) The trial court then concluded that "I think where we're at its unfortunate, but we have the ability to fashion a continuance in a way that reduces the prejudice to the Defendant." (Id., p. 10.) The trial court continued the jury trial until September 17, 2019, after defense counsel assured the court "that would give [him] ample time" to complete his investigation and interview Mr. Brown. (Id., p. 12.) The trial court, however, recognized that the continuance "puts us in a . . . weird position with jurors, the jury" because their term was technically supposed to end the next day. (Id.) Although the trial court indicated that the jurors most likely would not be happy about the delay, the court stated that "it doesn't matter . . . they've got to serve and do what they need to do, but we just have to make sure that in the meantime that they don't - - that put us at risk for them to do independent research." (Id., pp. 12 – 13.) The trial court then concluded it could "give them as stern an order" as possible to avoid doing independent research while the trial was on hold. (Id., p. 13.) The trial court entered a written order explicitly denying Petitioner's motion to dismiss and continuing the trial until September 17, 2019. (Document No. 26-6.)

When the parties reconvened on September 17, 2019, defense counsel requested a further continuance of the jury trial. (Document No. 31-1.) Defense counsel explained that due to the unavailability of Mr. Brown's counsel, defense counsel "could not ethically talk to Mr. Brown until last night." (Id., p. 4.) Defense counsel confirmed that he and the investigator talked to Mr. Brown, who "confirmed the nature of his testimony" was that someone other than Petitioner murdered Mr. Borders. (Id.) Defense counsel further noted that Mr. Brown provided the names of eight witnesses, who could collaborate such. (Id.) Defense counsel, however, explained that he

3

needed additional time to located and interview these witnesses. (<u>Id.</u>) When the trial court inquired of the State's position, the State moved for mistrial arguing that it would be prejudiced by further delay. (<u>Id.</u>, p. 5.) Specifically, the State argued that "[i]t's the State's fear that the jurors have forgotten probably most of what the State's done so far, and the State would feel that it would be prejudiced by - - well, we've already been prejudiced by the delay, and then additionally any further delay would certainly just compound that." (<u>Id.</u>) The State further complained that "we're going to have to have a day-long evidentiary hearing on whether this information that Robert Brown is going to opine to is relevant or not." (<u>Id.</u>) The State concluded that it believed "it's in the interest of justice for - - an actually in everyone's best interest for this matter just to be declared a mistrial and let's reset it and do it again." (<u>Id.</u>, pp. 5 – 6.) Without allowing defense counsel to respond to the State's motion for a mistrial, the trial court denied defense counsel's request for a continuance and granted the State's motion for a mistrial. (<u>Id.</u>, pp. 6 – 7.) The trial court explained that it initially believed a continuance, instead of a dismissal, was an appropriate mechanism to address the delayed disclosure of evidence. (<u>Id.</u>, p. 6.) The trial court stated that the continuance "was longer than I was comfortable with to begin with, but that's what I thought under the circumstance would be warranted, but now we're at a point where we have to delay it even further and then have a trial within a trial." (<u>Id.</u>) The trial court explained that it would be required to "basically [have] a trial outside the jury as to whether . . . this evidence that Mr. Brown purports to testify to" is admissible. (<u>Id.</u>) The trial court stated that this "is another day that the jury sits there without being involved in the case." (<u>Id.</u>) The trial court explained that "my job as the judge in this case is to make sure both sides get a fair shake, and as I look at this now the longer the delay during the State's case in chief, the more concern I have about whether either side at this point is getting . . . a fair shake, that the jury recalls the evidence." (<u>Id.</u>, pp. 6 – 7.) The trial court concluded

4

it was declaring a mistrial to "allow all these other evidentiary and procedural issues to be worked out so that we're not wasting the jury's time trying to decide that in the middle of the trial." (Id., p. 7.) Defense counsel stated that since the trial court had made its ruling, "let me put my objection on the record." (Id.) Defense counsel stated that he objected to the mistrial noting that although the State claimed to have suffered prejudice from the continuance, the continuance was caused by the State's delay in producing exculpatory evidence. (Id.) Defense counsel explained that "some of the state officers in this case were the same state officers in the Brown case, and it was obviously exculpatory evidence that should have been disclosed." (Id.) Defense counsel again noted that he was requesting that the case be dismissed. (Id.)

The next day, on September 18, 2019, the trial court entered a written order granting the State's motion for a mistrial and setting a new trial date. (Document No. 26-8.) The trial court first noted that "the previous continuance has not proved sufficient to remedy the prejudice to the Defendant caused by the State's late disclosure of the Robert Brown investigatory file. (Id, p. 3.) The trial court determined that "[a]ny further continuance of the present trial would unduly prejudice the State and create a significant risk for jury confusion and further attrition to the jury's already strained retention of the evidence present thus far, which is a problem for both sides." (Id.) The trial court stated that its "primary responsibility is to see that the trial of this case is fair to both sides." (Id.) The trial court then reasoned that a mistrial was appropriate because such would (1) "allow the Defendant sufficient time to be in a position to adequately address the late-disclosed information at trial, thereby eliminating any remaining prejudice caused thereby," and (2) "it would relieve any prejudice to the State's case-in-chief and the Defendant occasioned by further, uncertain delay." (Id., p. 4.) The trial court found that "manifest necessity" existed to justify a mistrial because "[m]oving forward with this trial under the present circumstances would prejudice

both parties." (Id.) Finally, the trial court noted it did not "declare this mistrial lightly" taking into consideration "that thousands of taxpayer dollars have been wasted along with valuable time of prospective jurors and jurors, who stood ready, willing, and able to perform their civic duty to try this case." (Id.)

On November 25, 2019, Petitioner filed a motion to dismiss indictment arguing that a second trial would violate his rights under the Double Jeopardy Clause. (Document No. 26-9.) By Order entered on November 26, 2019, the trial court denied the motion referring to its Order granting the mistrial. (Document No. 26-10.) On December 2, 2019, Petitioner petitioned the West Virginia Supreme Court of Appeals ("WVSCA") for a writ of prohibition to prevent his second trial. (Document No. 26-18.) By Order entered on February 20, 2020, the WVSCA denied Petitioner's petition for writ of prohibition. (Document No. 26-20.) The WVSCA's Order contained no analysis. (Id.)

**2.    Instant Section 2241 Petition:**

On February 10, 2021, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in Federal Custody. (Document No. 1.) In his Petition, Petitioner indicates that he is a pretrial detainee challenging his detention pursuant to an Indictment filed in the Fayette County Circuit Court in State v. Saunders, Criminal No. 17-F-26, charging Petitioner with one count of conspiracy to commit a felony (Count One), one count of murder (Count Two), and one count of robbery in the first-degree (Count Three). (Id.) Petitioner states three grounds for claiming that he is being held in violation of the Constitution or laws of the United States. (Id., pp. 7 – 15.) First, Petitioner argues that the State improperly and knowingly presented false or misleading testimony to the grand jury. (Id., pp. 6, 10 – 11.) Petitioner contends that a large portion of Carlon Gun's statement, wherein Petitioner is identified as a person fleeing

6

from the crime scene, "can be proven false." (Id.) Petitioner argues that the State's "reference to Carlon Gun's alleged identification, and officers' testimony to the grand jury, significantly contributed to the grand jury's decision to indict the [Petitioner]." (Id.)

Second, Petitioner argues that police officers violated the West Virginia Eyewitness Identification Act. (Id., pp. 7 and 12.) Petitioner contends that officers failed to follow proper procedure prior to his identification by Sabrina Gray on January 9, 2017. (Id.) In support, Petitioner states as follows:

> Prior to January 9, 2017, Sabrina Gray had not identified any of the codefendants in this case by name or following participation in a live or photo lineup. When asked about the identity of the subjects that entered her home on November 2, 2014, Gray stated "I Googled their mug shots. I have never seen them before in my life. I don't know any of those guys." The officer presented 1 photo of each defendant stating "these are the three we arrested." Gray asked, "Who is who?" Trooper Horrocks then proceeds to tell Gary the name of the [Petitioner] and each codefendant.

Thus, Petitioner concludes that his identification by Sabrina Gray "did not comply with the requirements of the West Virginia Eyewitness Identification Act." (Id.) Petitioner asserts officers and the prosecutor "knew, or should have known, that Sabrina Gray's identification was misleading and commits a violation toward [Petitioner]." (Id.) Therefore, Petitioner argues that the testimony before the grand jury that Petitioner was identified "by the victim, Sabrina Gray, was misleading" and "greatly contributed to the grand jury's decision to indict" Petitioner. (Id.)

Third, Petitioner argues that his "mistrial bars retrial due to double jeopardy" because a "manifest necessity" was not properly found by the trial court. (Id., pp. 7, 13 – 15.) On September 9, 2019, a few days after Petitioner's jury trial began (September 4, 2019), Petitioner states that he discovered the existence of "certain exculpatory evidence." (Id., p. 13.) Petitioner acknowledges that an *in camera* hearing was conducted and the State acknowledged and disclosed this exculpatory evidence. (Id.) Petitioner states that his defense counsel "moved to dismiss this action

contending that the State had improperly and prejudicially failed to disclose exculpatory evidence in advance of trial in violation of <u>Brady v. Maryland</u>." (<u>Id.</u>) Petitioner indicates that the motion was denied, but the trial court granted a brief continuance to allow the defense time to investigate the exculpatory evidence. (<u>Id.</u>) Petitioner states that the parties reconvened on September 17, 2019, wherein his defense counsel informed the trial court that additional time was necessary to investigate the exculpatory evidence and interview newly discovered witnesses. (<u>Id.</u>, p. 14.) Petitioner complains that the State objected to a further continuance of the jury trial and requested a mistrial. (<u>Id.</u>) Petitioner states that "[a]fter hearing arguments of counsel, the Court ordered a mistrial, sustain the State's contention that 'it's the State's fear that the jurors have forgotten probably most of what the State's done so far.'" (<u>Id.</u>) Petitioner argues that the declaration of a mistrial "was not supported by 'manifest necessity' allowing avoidance of double jeopardy." (<u>Id.</u>) Petitioner contends that the trial court should have "polled the jury to determine any prejudice" or "crafted an instruction to cure the dilemma." (<u>Id.</u>) Petitioner complains that the trial court failed to consider any alternative avenues and "the Court's finding of 'manifest necessity' was not supported by anything other the State's fear or suspicion of the juror's memory." (<u>Id.</u>)

Finally, Petitioner indicates that he appealed the trial court's decision granting a mistrial to the WVSCA. (<u>Id.</u>, p. 3.) Petitioner states that his appeal was refused on January 6, 2020, and "I believe this to be my next step to higher court." (<u>Id.</u>, p. 4.) As relief, Petitioner requests that this Court "issue a writ of petition to reverse the Court of Fayette County's Order denying the Petitioner's Motion to Dismiss, and further dismiss this criminal action in accordance with constitutional protections of the Fifth Amendment to the Constitution and Article 3, Section 5 of the West Virginia Constitution which protects individuals from and against double jeopardy." (<u>Id.</u>, p. 8.)

8

By Proposed Findings and Recommendation entered on February 18, 2021, the undersigned recommended that Petitioner's Section 2241 Petition be denied based upon the Younger-abstention doctrine. (Document No. 5.) Following the granting of extensions of time, Petitioner filed his Objections on March 31, 2021. (Document No. 15.) By Memorandum Opinion and Order entered on April 13, 2021, United States District Judge Irene C. Berger sustained Petitioner's Objections, rejected the undersigned's recommendation, and remanded the case for further findings in accordance with her opinion. (Document No. 16.) Judge Berger explained that the mandates of the Younger-abstention doctrine may be disregarded by a federal court where "extraordinary circumstances exist that present a threat of immediate and irreparable injury." (Id., pp. 6 – 7.) Judge Berger determined that a double jeopardy claim may constitute such an extraordinary circumstance. (Id., p. 7.) Specifically, Judge Berger stated as follows:

> Construing the Petitioner's petition liberally, the Court will review the petition as one filed pursuant to 28 U.S.C. § 2254, since the Petitioner is challenging a state court judgment. In this case, the Petitioner has put forth a claim that he is being held as a pretrial detainee in violation of his double jeopardy rights. In particular, the Petitioner has asserted that a jury trial began on the pending indictment, but that a mistrial was declared after the discovery of exculpatory evidence and a continuance. He asserts that he is now being held as a pretrial detainee on the same indictment, despite a motion to dismiss the pending indictment due to a double jeopardy violation.
>
> The case law is clear that violation of a defendant's double jeopardy rights presents an extraordinary circumstance that could warrant federal intervention and refraining from *Younger* abstention. The Petitioner has set forth a claim that, if determined to be colorable, may warrant federal intervention. However, additional information is needed to determine whether the alleged double jeopardy violation is in fact clear, immediate, and irreparable, and whether the Petitioner has exhausted remedies available to him at the state level. Therefore, the Court finds that the Petitioner's petition for writ of habeas corpus should not be dismissed.

(Id., p. 7.)

By Order entered on April 14, 2021, the undersigned directed Respondent to file an Answer to the allegations contained in Petitioner's Petition and show cause, if any, why the writ of *habeas*

*corpus* sought by Petitioner should not be granted. (Document No. 17.) On May 13, 2021, Petitioner filed a Motion for Preliminary Injunction and Motion for Appointment of Counsel. (Document Nos. 19 – 20.) In his Motion for Preliminary Injunction, Petitioner requests that this Court enjoin "Respondent and any agents in active concert or participation, including the State of West Virginia Fayette County Circuit Court, from scheduling any hearings and/or trial dates due to the Double Jeopardy constitutional violation imposed upon Petitioner from the previous trial." (Document No. 19.) By Order entered on May 14, 2021, the undersigned granted Petitioner's Motion for Appointment of Counsel and directed that the Office of the Federal Public Defender represent Petitioner in the above action. (Document No. 21.)

On June 9, 2021, Respondent filed his "Motion to Dismiss and Response to Motion for Injunctive Relief" and Memorandum in Support. (Document Nos. 26 and 27.) First, Respondent argues Petitioner's Section 2241 Petition should be dismissed because the Younger abstention doctrine precludes this Court from interfering with Petitioner's State criminal proceedings. (Document No. 27, pp. 12 – 17.) Respondent explains that "[b]ecause manifest necessity existed for the Circuit Court's granting of a mistrial, the Double Jeopardy Clause has not been violated." (Id., p. 15.) Thus, Respondent argues there will be no irreparable injury to Petitioner because "he may appeal the Circuit Court's order denying his motion to dismiss following the resolution of the trial." (Id.) Respondent further contends that the Circuit Court properly determined a "manifest necessity" existed for the granting of the mistrial because a further continuance of the trial would prejudice both parties. (Id., pp. 15 – 17.) Next, Respondent argues that "[b]ecause the Circuit Court granted a mistrial due to manifest necessity, the Younger abstention doctrine precludes this Court from interfering with Petitioner's State criminal proceedings and, therefore, Petitioner must exhaust State remedies prior to seeking Federal habeas relief." (Id., pp. 17 – 19.) Respondent

10

explains that to the extent Petitioner wishes to assert the claims presented in his Section 2241 Petition, Petitioner's claims are premature as such should be asserted in a Section 2254 Petition. (Id.) Respondent contends that such would be premature because Petitioner's criminal proceedings are ongoing and he has not exhausted his claims pursuant to Section 2254(b). (Id.) Finally, Respondent argues that Petitioner is not entitled to injunctive relief. (Id., pp. 19 – 20.) Respondent notes that Petitioner's request for this Court to enjoin his underlying criminal trial scheduled to begin on June 1, 2021, is moot. (Id.) Respondent states that the "Special Prosecuting Attorney representing the State in Petitioner's criminal proceeding represented to the undersigned counsel on May 24, 2021, that the June 1, 2021, trial date was continued generally and that a status conference would be held in August 2021." (Id.) Respondent, therefore, concludes that Petitioner's Section 2241 Petition should be dismissed and his Motion for Injunctive Relief should be denied. (Id.)

As Exhibits, Respondent attaches the following: (1) A copy of the Docket Sheet for Case No. 17-F-26 (Document No. 26-1); (2) A copy of the Indictment in Case No. 17-F-26 (Document No. 26-2); (3) A copy of transcript excerpts of proceedings conducted in Case No. 17-F-26 on September 5, 2019 (Document No. 26-3); (4) A copy of transcript excerpts of proceedings conducted in Case No. 17-F-26 on September 6, 2019 (Document No. 26-4); (5) A copy of transcript excerpts of proceedings conducted in Case No. 17-F-26 on September 9, 2019 (Document No. 26-5); (6) A copy of the trial court's Order continuing the trial until September 17, 2019, and holding jurors in the case over to the September 2019 term of court as filed in Case No. 17-F-26 (Document No. 26-6); (7) A copy of transcript excerpts of proceedings conducted in Case No. 17-F-26 on September 17, 2019 (Document No. 26-7); (8) A copy of the trial court's Order granting a mistrial and setting a new trial date as filed in Case No. 17-F-26 (Document No. 26-8);

(9) A copy of Petitioner's Motion to Dismiss as filed in Case No. 17-F-26 (Document No. 26-9);

(10) A copy of the trial court's Order denying Petitioner's Motion to Dismiss as filed in Case No.

17-F-26 (Document No. 26-10); (11) A copy of the trial court's Order continuing the case to the

September 2020 Term of Court and setting a trial date as filed in Case No. 17-F-26 (Document

No. 26-11); (12) A copy of the trial court's September 17, 2020, Order as filed in Case No. 17-F-

26 (Document No. 26-12); (13) A copy of the trial court's Order setting a trial date as filed in Case

No. 17-F-26 (Document No. 26-13); (14) A copy of the trial court's Order granting G. Todd

Houck's Motion to Withdraw as Counsel and appointing new counsel as filed in Case No. 17-F-

26 (Document No. 26-14); (15) A copy of the Motion to Continue Trial Date as filed in Case No.

17-F-26 (Document No. 26-15); (16) A copy of the trial court's Order setting the trial date as filed

in Case No. 17-F-26 (Document No. 26-16.); (17) A copy of the Motion to Continue Trial Date as

filed in Case No. 17-F-26 (Document No. 26-17); (18) A copy of Petitioner's Petition for Writ of

Prohibition as filed with the WVSCA (Document No. 26-18); (19) A copy of the Respondent's

Summary Response to the Petition for Writ of Prohibition (Document No. 26-19); (20) A copy of

the WVSCA's Order refusing the Petition for Writ of Prohibition (Document No. 26-20); (21) A

copy of the Docket Sheet for Case No. 14-F-99 (Document No. 26-21); (22) A copy of the

Indictment as filed in Case No. 14-F-99 (Document No. 26-22); (23) A copy of the plea of guilty

in Case No. 14-F-99 (Document No. 23); (24) A copy of the trial court's Order accepting

Petitioner's plea in Case No. 14-F-99 (Document No. 26-24); (25) A copy of the trial court's

Sentencing Order in Case No. 14-F-99 (Document No. 26-25); (26) A copy of the Affidavit as

filed in Case No. 14-F-99 (Document No. 26-26); (27) A copy of the Order accepting Petitioner's

guilty plea and revoking probation in Case No. 14-F-99 (Document No. 26-27); (28) A copy of

the Docket Sheet for Case No. 15-IF-279 (Document No. 26-28); (29) A copy of the Information

as filed Case No. 15-IF-279 (Document No. 26-29); (30) A copy of the trial court's Order accepting

Petitioner's guilty plea in Case No. 15-IF-279 (Document No. 26-30); (31) A copy of the trial

court's Order sentencing Petitioner in Case No. 15-IF-279 (Document No. 26-31); (32) A copy of

the Docket Sheet for Case No. 14-F-240 (Document No. 26-32); (33) A copy of the Information

in Case No. 14-F-240 (Document No. 26-33); (34) A copy of the trial court's Order accepting

Petitioner's plea in Case No. 14-F-240 (Document No. 26-34); (35) A copy of the Docket Sheet

in Case No. 20-F-364 (Document No. 26-35); and (36) A copy of the Indictment in Case No. 20-

F-364 (Document No. 26-36).

On August 13, 2021, following the granting of an extension of time, Petitioner filed his

Response. (Document No. 31.) First, Petitioner notes that he is appropriately seeking relief under

Section 2241. (Id., p. 6.) Petitioner indicates that the District Court merely erred "in the

memorandum order sustaining the objections to the proposed findings and recommendations,

where it held that 'the Court will review the petition as one filed pursuant to 28 U.S.C. § 2254'

after repeatedly noting that [Petitioner] sought relief under § 2241." (Id.) Petitioner explains that

"§ 2254 is a vehicle for review of final convictions, whereas § 2241 is a vehicle for review of other

Constitutional violations." (Id., p. 7.) Since Petitioner is not in custody "pursuant to a judgment of

a state court" in the instant matter, Petitioner argues that Petition is properly considered under

Section 2241. (Id., p. 8.) Thus, Petitioner argues that this "Court is free to examine whether the

state court erred in its decision to grant a mistrial, without showing its decision any particular

deference." (Id., p. 9.) Second, Petitioner states he has exhausted his State remedies. (Id., pp. 9 –

10.) Petitioner explains that "[b]y objecting to a mistrial, presenting the double jeopardy issue to

the trial court in a motion to dismiss, and seeking a writ of prohibition from the West Virginia

Supreme Court, [Petitioner] did all he could to have state courts address this issue." (Id.) Third,

Petitioner argues that <u>Younger</u> abstention is inappropriate because "double jeopardy protects a defendant from being tried twice for the same offense, regardless of the outcome of a first trial." (<u>Id.</u>, pp. 11 – 13.) Petitioner explains that if he "is tried twice for the same offense before different juries he has been harmed, even if the second jury eventually acquits him." (<u>Id.</u>, p. 11.) Specifically, Petitioner argues that his double jeopardy rights will be violated by a second trial and he has unsuccessfully sought relief in the State courts. (<u>Id.</u>, p. 12.) Petitioner argues <u>Younger</u> abstention is inappropriate because he will be irreparably harmed. (<u>Id.</u>, pp. 12 – 13.) Fourth, Petitioner argues there was no "manifest necessity" supporting the trial court's declaration of a mistrial. (<u>Id.</u>, pp. 13 – 21.) Petitioner explains that the trial court declared a mistrial without adequately exploring other options and without sufficiently considering the impact on Petitioner's double jeopardy rights. (<u>Id.</u>) Petitioner argues that the trial court's basis for the mistrial was that further delay raised concerns that jurors would "have forgotten most of what the state's done so far." (<u>Id.</u>) Petitioner complains that this was "pure speculation" because the trial court never inquired of "the jurors about their recollection or whether they could continue on the case if there was further delay." (<u>Id.</u>) Petitioner states that even with the anticipated delay, his trial would have been significantly shorter than other trials that last for several weeks or months wherein jurors are "required to take in and remember much more evidence and have done so without issue." (<u>Id.</u>) Petitioner further complains that the "trial court did not mention, much less give serious consideration to, [Petitioner's] right to have his trial completed by the jury that had already been empaneled." (<u>Id.</u>) Finally, Petitioner states that he was recently denied parole and "informed that the only reason for that denial was the detainer that arose from his still-pending charges related to his proceeding." (<u>Id.</u>, p. 22.) Petitioner claims that "if this Court were to grant [Petitioner] the requested relief, he would be released from custody." (<u>Id.</u>) Therefore, Petitioner requests that this

14

Court deny Respondent's Motion to Dismiss, grant his Section 2241 Petition, and direct that the prosecution of Petitioner in Fayette County not to proceed. (Id.) As an Exhibit, Petitioner attaches a copy of the transcripts of the proceedings held on September 17, 2019. (Document No. 31-1.)

In Reply, Respondent first argues that only Petitioner's third ground for relief (double jeopardy claim) is exhausted and cognizable under Section 2241. (Document No. 32, pp. 1 – 2.) Respondent argues that Petitioner's other two grounds (misleading testimony to the grand jury and violation of the West Virginia Eyewitness Identification Act) are unexhausted and not cognizable under Section 2241. (Id.) Second, Respondent argues that the trial court's determination of "manifest necessity" must be given "special deference." (Id., p. 2.) Respondent contends that "[b]ecause there was no intent to gain a tactical advantage, the Circuit Court's ultimate decision to grant a mistrial is entitled to special deference." (Id., p. 3.) Respondent argues that the trial court did explore other options prior to granting the mistrial. (Id.) Respondent, however, notes that the trial court ultimately determined that a further continuance would prejudice both the State and Petitioner. (Id.) Respondent concludes that the trial court "exercised sound discretion to assure that, taking all the circumstances into consideration, there was a manifest necessity for granting the State's motion for a mistrial." (Id.) Finally, Respondent states that Petitioner's parole hearing was held on August 2, 2021. (Id., pp. 4 – 5.) Respondent disputes Petitioner's claim that the only reason he was denied parole was his "still-pending charges related to this proceeding." (Id.) Respondent explains that he obtained a copy of the parole decision, which revealed that Petitioner was denied parole based on the following: (1) Petitioner's "high risk and needs assessment indicating [Petitioner's] risk to the community;" (2) Petitioner's "recent misconducts as determined by the DOC;" (3) Petitioner's "prior unsatisfactory supervision history;" and (4) the existence of a county detainer filed against him. (Id., p. 5.) Thus, Respondent notes that the present

charges pending against Petitioner in Fayette County (Case No. 17-F-26) were only one of four reasons he was denied parole. (Id.) As an Exhibit, Respondent attaches a copy of the "Parole Decision Summary." (Document No. 32-2.)

## ANALYSIS

Title 28 U.S.C. § 2241 provides a remedy when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). State and Federal Court pretrial detainees may properly resort to Section 2241 for relief. Davis v. South Carolina, 2008 WL 154126 (D.S.C. Jan. 14, 2008)("[P]etitions for federal habeas corpus relief by pretrial detainees can be brought under 28 U.S.C. § 2241 . . ..") Pretrial detainees requesting *habeas* relief in Federal Court must demonstrate exhaustion of state remedies and "special circumstances" justifying federal review. Brazell v. Boyd, 991 F.2d 787, * 1 (4th Cir. 1993); also see Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 489, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973)("[F]ederal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court."); Jones v. Perkins, 245 U.S. 390, 381, 38 S.Ct. 166, 62 L.Ed. 358 (1918)("It is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial procedure should be followed and habeas corpus should not be granted in advance of a trial."); Dickerson v. Louisiana, 816 F.2d 220, 224 - 226 (5th Cir. 1987); Moore v. DeYoung, 515 F.2d 437, 443 (3rd Cir. 1975)("[J]urisdiction without exhaustion should not be exercised at the pre-trial stage unless extraordinary circumstances are present.") In the absence of special or extraordinary circumstances, federal courts must abstain from enjoining state criminal prosecutions and allow the state courts the first opportunity to address any constitutional issues. Younger v. Harris, 401 U.S. 37, 43, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Obviously, the circumstances under which

pretrial detainees might make a viable claim for *habeas* relief are extremely limited. Thus, though District Courts can consider pretrial detainees' petitions under Section 2241, they rarely, if ever, do so finding that (1) they should abstain from exercising jurisdiction and/or (2) they do not have jurisdiction because petitioners have not exhausted State and Federal Court remedies. See Lucas v. Francis, 2015 WL 9899362, * 4 (S.D.W.Va. Dec. 28, 2015); Chaparro v. Reardon, 2014 WL 4662233 (D.N.J. Sept. 18, 2014); Elkins v. United States, 2012 WL 1016066 (W.D.Va. March 23, 2012)("[C]ourts routinely dismiss as premature habeas petitions filed during the defendant's criminal trial and raising claims that should be addressed as part of the criminal proceedings."); Mitchell v. Harry, 2013 WL 6283691 (M.D. Pa. Dec. 3, 2013); Smith v. PA State Attorney General, 2011 WL 6012976 (M.D.Pa. Nov. 3, 2011); Davis v. South Carolina, 2008 WL 154126 (D.S.C. Jan. 14, 2008); Clark v. Anderson, 2001 WL 1631538 (N.D. Tex. Dec. 14, 2001); Moore v. United States, 875 F.Supp. 620 (D.Neb. 1994).

Initially, the undersigned notes that the above case was remanded to the undersigned for the sole consideration of the double jeopardy issue. (Document No. 16.) Although there appeared to be some confusion as to whether Petitioner could properly seek relief pursuant to Section 2241 or Section 2254, the undersigned finds that Petitioner's double jeopardy claim is properly brought pursuant to Section 2241. Petitioner is not in custody pursuant to a judgment of a state court in the instant matter. Instead, Petitioner is a pretrial detainee challenging a double jeopardy violation in a pending State criminal action. See Saulsberry v. Lee, 937 F.3d 644, *647 (6th Cir. 2019)("Inmates with final state court judgments thus must travel down the § 2254 road, while pretrial detains must travel down the § 2241 path."). Thus, Petitioner is properly seeking relief under Section 2241 and the Court will now consider whether his claims are precluded by the Younger-abstention doctrine.

"Under the Younger-abstention doctrine, interest of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 237-38, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). The Fourth Circuit has recognized that "Younger abstention is appropriate only in those cases in which (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interest, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." Employers Resource Management Co., Inc. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995), cert. denied, 516 U.S. 1094, 1167 S.Ct. 816, 133 L.Ed.2d 761 (1996). A Court should disregard Younger's mandate only where "(1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006)(internal quotations omitted). "[O]ne such extraordinary circumstance may exist in the double jeopardy context." Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006)(citations omitted). It is well recognized that a defendant that suffers the "cost, anxiety, and inconvenience" of defending a *single* criminal prosecution alone does not face an "irreparable injury." Gilliam v. Foster, 75 F.3d 881, 904 (4th Cir. 1996). The Double Jeopardy Clause of the Fifth Amendment, however, "protects not only against multiple convictions but also 'against being twice put to trial for the same offense.'" Id.(internal citations omitted). The Fourth Circuit has recognized that this "portion of the constitutional protection it affords would be irreparably lost if petitioners were forced to endure the second trial before seeking to vindicate their constitutional rights at the federal level." Id.(internal citations omitted). The Court, therefore, rejects Respondent's argument that

18

there will be no irreparable injury to Petitioner because "he may appeal the Circuit Court's order denying his motion to dismiss following the resolution of the trial." (Document No. 27, p. 15.) The irreparable deprivation of a petitioner's Fifth Amendment Double Jeopardy rights is an extraordinary circumstance warranting federal court equitable intervention in a petitioner's state criminal proceeding. Gilliam, 75 F.3d at 904. Accordingly, the undersigned will consider whether the record demonstrates that a second criminal trial will constitute violation of Petitioner's double jeopardy rights thereby making federal intervention appropriate.

Although Petitioner's claim is properly brought pursuant to Section 2241, federal courts have consistently recognized that the principles of comity and federalism require pretrial detainees to present their constitutional claims in state court before seeking relief pursuant to Section 2241. See Richardson v. Thompson, 2015 WL 7422709, * 3 (D.S.C. Sept. 30, 2015)("Although § 2241 does not include a statutory exhaustion requirement comparable to that found at § 2254(b), federal courts have consistently recognized that the principles of comity and federalism require state pre-trial detainees to present their constitutional claims in state court before seeking federal habeas corpus relief under § 2241."). In the instant case, it is undisputed that Petitioner has exhausted his double jeopardy claim. (Document No. 27, p. 15, Document No. 31, p. 10, Document No. 32, pp. 1 - 2.) Since Petitioner is a pretrial detainee challenging his detention under Section 2241, the special deference ordinarily given to state court judgments under Section 2254 is inapplicable. Seay v. Cannon, 927 F.3d 776, 780-81 (4th Cir. 2019). This Court will conduct a de nevo review of the state court proceedings when addressing the Section 2241 Petition. Id.; also see Phillips v. Court of Common Pleas, Hamilton County, Ohio, 668 F.3d 804, * 810 (6th Cir. 2012)(joining the First, Fifth, Ninth, and Tenth Circuits in concluding that the deference that § 2254(d) requires never applies to § 2241 petitions brought by pretrial detainees and stating that the court would

19

conduct a *de novo* review of the state court proceedings in addressing petitioner's § 2241 petition); <u>Stevens v. Myers</u>, 2018 WL 3133436, * 3 (D.S.C. March 16, 2018)("[B]ecause the Petition is brought under § 2241, this Court conducts a *de novo* review of the state court proceedings when addressing the Petition.").

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause further "embraces the defendant's 'valued right to have his trial completed by a particular tribunal." <u>Arizona v. Washington</u>, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In a jury trial, jeopardy attaches when the jury is empaneled. <u>Crist v. Bretz</u>, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); <u>United States v. Shafer</u>, 987 F.2d 1054, 1047 (4th Cir. 1993). Once a jury is empaneled, "the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." <u>Shafer</u>, 987 F.2d at 1047. A retrial, however, may occur when a mistrial is properly granted. <u>Arizona</u>, 434 US. at 505, 98 S.Ct. at 824. When a defendant opposes a mistrial, the mistrial must be justified by showing a "manifest necessity" or that the ends of justice would be defeated if a mistrial were not granted. <u>Id.</u> The Supreme Court has consistently "stressed that great deference to be accorded to the decision of the trial judge to grant a mistrial." <u>Gilliam</u>, 75 F.3d at 894. Although great deference is owed to the decision of the trial judge to grant a mistrial, it not unlimited. <u>Id.</u> To ensure the adequate protection of a criminal defendant's constitutional right to have a particular empaneled jury decide his guilt, reviewing courts must determine that the trial judge exercised "sound discretion" in declaring a mistrial. <u>Id.</u>(citing <u>Arizona</u>, 434 U.S. at 514, 98 S.Ct. at 835). If the granting of a mistrial by the trial judge amounts to "an irrational or

irresponsible act," the trial judge must be found to have abused his discretion. Id.(citations omitted).

"[A] reviewing court should look whether a trial judge rationally could conclude that the grant of the mistrial was compelled by manifest necessity or whether the needs of public justice demanded that one be granted on the peculiar facts presented." Id. Although the term "manifest necessity" does not require that "a mistrial be 'necessary' in the strictest sense of the word, it does require a 'high degree' of necessity." Gilliam, 75 F.3d at 895; also see Arizona, 434 US. at 506, 98 S.Ct. at 831. A clear example of "manifest necessity" is when a jury is unable to reach a verdict. Gilliam, 75 F.3d at 895. On the other extreme, wherein there is a lack of "manifest necessity," is when a prosecutor seeks a mistrial to obtain additional time to arrange for evidence to strengthen the case against the defendant. Id.; also see Arizona, 434 at U.S. at 508, 98 S.Ct. at 832(explaining that strict scrutiny should be applied when the basis for a mistrial is unavailability of critical prosecution evidence because the Double Jeopardy Clause is meant to protect a criminal defendant from multiple prosecutions where the prosecutor seeks a mistrial to "afford the prosecution a more favorable opportunity to convict the defendant."); Seay, 927 F.3d 781-83 (applying the strictest scrutiny standard of review, the court determined the district court erred in failing to grant *habeas* relief on petitioner's double jeopardy claim where the state court granted the prosecution's request for a mistrial based on the unavailability of the government's witness); Colvin v. Sheets, 598 F3d 242, 253 (6th Cir. 2010)(Reviewing courts apply a "sliding scale of scrutiny" concerning manifest necessity: the strictest scrutiny applies when the basis of the mistrial is judicial or prosecutorial misconduct, and the greatest deference extends to mistrials declared due to a deadlocked jury.). Between these two extremes "exists a spectrum of trial errors and other difficulties, some creating manifest necessity for a mistrial and others falling far short of justifying a mistrial." Gilliam, 75

F.3d at 895. In determining the existence of a "manifest necessity," consideration must be given to the particular circumstances before the trial judge. Id. When determining whether the government satisfied its burden of showing manifest necessity, "the critical inquiry is whether less drastic alternatives were available." Shafer, 987 F.2d at 1057; also see United States v. Jorn, 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)(finding "manifest necessity" did not exist when the trial judge gave "no consideration . . . to the possibility of a trial continuance" instead of a mistrial). Other factors that indicate that a trial judge exercised sound discretion involve whether the trial judge acted precipitately and indicated concern that the granting of a mistrial might deprive the criminal defendant of his constitutional right to have the empaneled jury decide his or her guilt. Gilliam, 75 F.3d at 901("[A] reviewing court may find relevant whether the trial judge acted precipitately or whether the trial judge expressed concern regarding the possible double jeopardy consequences of an erroneous declaration of a mistrial, heard extensive argument on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial.")

Considering the circumstances before the trial judge, the record fails to support the trial judge's finding of "manifest necessity" for granting the mistrial. It appears the trial judge granted a mistrial without hearing from defense counsel on the issue and without considering the double jeopardy implications to Petitioner. As described above, Petitioner's jury trial began on September 4, 2019, the State began presenting testimony on September 5, 2019, the State produced exculpatory evidence (Mr. Brown's investigatory file) to defense counsel on September 6, 2019, defense counsel began reviewing the exculpatory evidence over the weekend on September 7 – 8, 2019, and defense counsel requested that the criminal charges be dismissed on September 9, 2019 due to the delayed disclosure of Brady evidence. (Document Nos. 26-3, 26-5, 26-6.) Upon defense

22

counsel's request for dismissal, the trial judge specifically inquired of defense counsel, "you are asking for a dismissal, not a mistrial." (Document No. 26-5, p. 5.) Defense counsel responded that his "request is for a dismissal, and at the very least a continuance" to allow counsel time to interview Mr. Brown at a state penitentiary. (Id.) After citing state caselaw and procedural rules, the trial judge responded that "you're really looking at whether there's a mistrial or a continuance." (Id., pp. 5 – 7.) In response, both defense counsel and Petitioner clearly responded that they were *not* asking for a mistrial. (Id., p. 7.) After noting that "we're not dealing with an intentional violation of *Brady*," the trial judge heard the State's arguments against dismissal. (Id., pp. 7 – 10.) The trial judge then denied the motion to dismiss finding that a continuance until September 17, 2019, was an adequate remedy to address any prejudice to the defendant for the delayed disclosure. (Id., pp. 10 – 13.) The trial judge expressed concern that: (1) The continuance "puts us in a . . . weird position with jurors, the jury" because their term was technically supposed to end the next day;[2] (2) The jurors would most likely not be happy about the delay; and (3) The need to give the jurors a "stern" order to avoid doing independent research while the trial was on hold. (Id.)

On September 17, 2019, defense counsel requested an additional continuance. (Document No. 31-1, p. 4.) Defense counsel explained that an additional continuance was necessary because Mr. Brown had just recently (1) "confirmed the nature of his testimony" was that someone other than Petitioner murdered Mr. Borders, and (2) provided the names of eight witnesses, who could collaborate such. (Id.) Thus, defense counsel needed additional time to located and interview these witnesses. (Id.) When the trial judge inquired of the State's position, the State moved for mistrial

---

[2] The prosecutor noted that with or without the continuance, the trial would have gone into the next term of Court as such expired on September 9, 2019. (Document No. 26-5, p. 13.) Therefore, Petitioner's jury trial would have gone into the next term of Court irrespective of the granting of the continuance due to the late disclosure of evidence.

arguing that it would be prejudiced by further delay. (Id., pp. 5 – 6.) Specifically, the State argued the following in support of a mistrial: (1) "It's the State's fear that the jurors have forgotten probably most of what the State's done so far, and the State would feel that it would be prejudiced by - - well, we've already been prejudiced by the delay, and then additionally any further delay would certainly just compound that;" (2) "[W]e're going to have to have a day-long evidentiary hearing on whether this information that Robert Brown is going to opine to is relevant or not;" and (3) "[I]t's in the interest of justice for - - an actually in everyone's best interest for this matter just to be declared a mistrial and let's reset it and do it again." (Id.) Without allowing defense counsel to respond to the State's motion for a mistrial, the trial judge denied defense counsel's request for a continuance and granted the State's motion for a mistrial. (Id., pp. 6 – 7.) Although the trial judge never specifically made a finding of "manifest necessity," the trial judge explained its reasoning for granting the mistrial as follows:

(1)     The trial judge initially believed a continuance, instead of a dismissal, was an appropriate mechanism to address the delayed disclosure of evidence.

(2)     The continuance "was longer than I was comfortable with to begin with, but that's what I thought under the circumstance would be warranted."

(3)     "[W]e're at a point where we have to delay it even further and then have a trial within a trial" concerning whether "this evidence that Mr. Brown purports to testify to" is admissible.

(4)     The "trial within a trial" would be "another day that the jury sits there without being involved in the case."

(5)     The trial judge's "job as the judge in this case is to make sure both sides get a fair shake, and as I look at this now the longer the delay during the State's case in chief, the more concern I have about whether either side at this point is getting . . . a fair shake, that the jury recalls the evidence."

(6)     Declaring a mistrial would "allow all these other evidentiary and procedural issues to be worked out so that we're not wasting the jury's time trying to decide that in the middle of the trial."

(Id.) After the trial judge had made his ruling, defense counsel put his objections on the record. (Id., p. 7.)

The next day, on September 18, 2019, the trial judge entered a written order granting the State's motion for a mistrial and setting a new trial date. (Document No. 26-8.) The trial judge determined that "[a]ny further continuance of the present trial would unduly prejudice the State and create a significant risk for jury confusion and further attrition to the jury's already strained retention of the evidence present thus far, which is a problem for both sides." (Id.) The trial judge stated that his "primary responsibility is to see that the trial of this case is fair to both sides." (Id.) The trial judge then reasoned that a mistrial was appropriate because such would (1) "allow the Defendant sufficient time to be in a position to adequately address the late-disclosed information at trial, thereby eliminating any remaining prejudice caused thereby," and (2) "it would relieve any prejudice to the State's case-in-chief and the Defendant occasioned by further, uncertain delay." (Id., p. 4.) The trial judge found that "manifest necessity" existed to justify a mistrial because "[m]oving forward with this trial under the present circumstances would prejudice both parties." (Id.) Finally, the trial judge noted he did not "declare this mistrial lightly" taking into consideration "that thousands of taxpayer dollars have been wasted along with valuable time of prospective jurors and jurors, who stood ready, willing, and able to perform their civic duty to try this case." (Id.)

The record reveals that a continuance was the only alternative to a mistrial considered by the trial judge. When considering the appropriateness of a continuance, the trial judge showed concern for the possible prejudice to the parties, the inconvenience to the jurors, and the waste of taxpayer dollars. Although the need for the continuance was caused by the State's failure to timely provide defense counsel with exculpatory evidence, the trial judge indicated particular concern for

prejudice to the State. The State, however, proceeded with the jury trial allowing jeopardy to attach even though the State was aware that this exculpatory evidence had not been produced to defense counsel.[3] See Seay, 927 F.3d at 782(citing Downum v. United States, 372 U.S. 734, 737-38, 83 S.Ct. 1033, 10L.Ed.2d 100 (1963)("[T]he double jeopardy inquiry focuses on the state's knowledge at the time the jury is empaneled."). Again, a continuance was the only alternative to a mistrial considered by the trial judge and the trial judge failed to allow defense counsel to address the issue or present possible alternatives. The trial judge expressed concern with the jury's ability to remember the State's evidence,[4] the possibility that the jurors would do independent research during the pending continuance, and the inconvenience to the jurors. The trial judge did not address possible methods to refresh the memory of the jury, such as recalling witnesses or allowing the State additional time for closing arguments. The trial judge did not inquire of the jury as to whether any of jurors had concerns about their ability to recall the evidence, or their availability to continue

---

[3] The undersigned agrees with Petitioner's defense counsel in the underlying criminal action that the Brown file was obviously exculpatory evidence that should have been disclosed prior to commencement of the jury trial. The State claimed that it acted without malicious intent in failing to turn over the Brown file to Petitioner earlier in discovery. The State explained that Mr. Brown's counsel had previously filed a motion seeking production of the investigatory file relating to the death of Franklin Borders (the victim in Petitioner's criminal case). At that time, the State objected to the disclosure of the then-investigatory file because no arrests had been made concerning Mr. Borders' murder. Mr. Brown's counsel argued Mr. Brown claimed that he believed that the victim in his case (Jamaal Calhoun) had killed Franklin Borders. Circuit Court Judge Hatcher conducted an *in camera* review of the Borders' investigatory file and determined that Jamaal Calhoun was not mentioned in Borders' investigatory file. A hearing was held on October 24, 2015, wherein Judge Hatcher allowed Mr. Brown's counsel to review the Borders' investigatory file and Judge Hatcher subsequently denied the motion for production as moot. (Document No. 26-6, fn. 1.) The State argued that it failed to disclose the Brown file to Petitioner based upon Judge Hatcher's decision that there was nothing in the Borders' investigatory files involving Mr. Calhoun. Although the Borders' investigatory file may not have contained information relevant to Mr. Brown's case, it seems clear that Mr. Brown's investigatory file contained relevant information concerning Petitioner's criminal action. The State was further aware that Chris Young was the investigatory officer in both the Brown case and Petitioner's case. Since there was evidence in the Brown case involving the death of Mr. Borders (the alleged victim in Petitioner's case), this should have been provided to Plaintiff irrespective of Judge Hatcher's decision in the Brown case.

[4] The State had presented six witnesses. (Document No. 26-8. p. 1.)

on the case, if there was a further continuance. As to the concern of jurors conducting independent research, the trial judge did not address the possibility or effectiveness of again giving the jury a "stern" instruction against jurors doing independent research. Furthermore, the above concerns were not unique to Petitioner's underlying criminal trial. Depending on the number of charges and the volume of the evidence, it is not uncommon for jury trials to last for weeks or months. The concern of jurors recalling the evidence, the possibility of jurors conducting independent research, and the inconvenience to the jurors, are common concerns that heighten with any lengthy criminal trial. Furthermore, the record is completely void of any indication that the trial judge considered the double jeopardy consequences to Petitioner prior to granting to the mistrial. The trial judge never acknowledged Petitioner's constitutional right to have his trial completed by a particular tribunal. Even after the trial judge declared a mistrial and defense counsel filed a motion to dismiss alleging a double jeopardy violation, the trial judge entered an Order denying the motion without addressing the double jeopardy issue. (Document No. 26-10.) The trial judge's Order merely denied the motion to dismiss by referring to its Order granting the mistrial. (Id.) As explained above, the trial judge's Order granting the mistrial and the transcripts are void of any indication that the trial judge considered the double jeopardy implications to Petitioner. (Document Nos. 26-10 and 31-1.) Based upon the foregoing, the undersigned finds that the trial judge failed to exercise "sound discretion" in granting the mistrial. See Gilliam, 75 F.3d at 901("[A] reviewing court may find relevant whether the trial judge acted precipitately or whether the trial judge expressed concern regarding the possible double jeopardy consequences of an erroneous declaration of a mistrial, heard extensive arguments on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial.") The undersigned concludes the record does not show the "manifest necessity" required to support a mistrial or that the ends of

justice would have been defeated without the granting of a mistrial. Thus, Petitioner's double jeopardy rights will be violated by a second trial. Since the record demonstrates that a second criminal trial will constitute a violation of Petitioner's double jeopardy rights, the undersigned finds that federal intervention is appropriate. The undersigned respectfully recommends that the District Court deny Respondent's Motion to Dismiss, grant Petitiner's Section 2241 Petition, direct the prosecution of Petitioner on the underlying criminal charges cease, and deny as moot Petitioner's Motion for Preliminary Injunction.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Respondent's Motion to Dismiss (Document No. 26), **GRANT** Petitioner's Section 2241 Petition (Document No. 1), **DIRECT** the prosecution of Petitioner on the underlying criminal charges to cease, **DENY as moot** Petitioner's Motion for Preliminary Injunction (Document No. 19), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner and counsel of record.

Date: September 17, 2021.

Omar J. Aboulhosn
United States Magistrate Judge