IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

QUANTEL SAUNDERS,

           Petitioner,

v.                                    CIVIL ACTION NO. 2:21-cv-00102

DONALD AMES,

           Respondent.

**MEMORANDUM OPINION AND ORDER**

On February 10, 2021, the Petitioner filed a *Petition for a Writ of Habeas Corpus Under 28 U.S.C. §2241* (Document 1), wherein he asserted that he was being held in violation of the Constitution or laws of the United States as a pretrial detainee pursuant to an indictment filed against him in Fayette County Circuit Court. By *Standing Order* (Document 4), this action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. In a first *Proposed Findings and Recommendation* (PF&R) (Document 5) submitted on February 18, 2021, the Magistrate Judge recommended that the Court deny the Petitioner's petition, adopt the first PF&R, and remove the matter from the Court's Docket. Upon consideration of the Petitioner's *Objections to Proposed Findings and Recommendations* (Document 15), filed on March 31, 2021, this Court found that the objections should be sustained, the first PF&R should be rejected, and the matter should be remanded for further proceedings.

In particular, the Court sought additional information to determine whether the alleged double jeopardy violation was clear, immediate, and irreparable, and whether the Petitioner had

exhausted all remedies available to him at the state level. Following remand, the Petitioner filed a *Motion for a Preliminary Injunction* (Document 19) to enjoin the Respondent and any agents from scheduling hearings and/or trial dates on the underlying criminal charges pending resolution of this matter. On June 9, 2021, *Respondent's Motion to Dismiss and Response to Motion for Injunctive Relief* (Document 26) was filed. After a reply by the Petitioner (Document 31), and rebuttal by the Respondent (Document 32), the Magistrate Judge submitted a renewed *Proposed Findings and Recommendation* (Document 33) recommending that the Court deny the Respondent's motion to dismiss, grant the Petitioner's Petition for Writ of Habeas Corpus, and direct the prosecution of the petitioner on the underlying charges to cease due to the double jeopardy rights afforded to the Petitioner.

The Respondents timely filed the *Respondent's Objections to Proposed Findings and Recommendations* (Document 34). For the reasons stated herein, the Court finds that the objections should be overruled, and the PF&R should be adopted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Aboulhosn's PF&R sets forth in detail the procedural and factual history surrounding the Petitioner's petition and the resulting proceedings. The Court now incorporates by reference those facts and procedural history and provides the following summary for context. The Petitioner is a pretrial detainee challenging his detention pursuant to a county detainer against him in Fayette County, West Virginia.[1] He is facing a second trial on charges for one count of

---

[1] See *State v. Saunders,* Criminal No. 17-F-26. The Court notes that the Petitioner is currently incarcerated serving a sentence in a separate matter. In the Petitioner's most recent Parole hearing, the Parole denial noted the existence of the Fayette County detainer as a reason for denial. While the parole decision summary (Document 32-2) does note the Fayette County detainer is but one of several factors considered in denying the Petitioner parole, it was, in fact, a factor that was considered, and thus, implicitly played a role in the continued confinement of the Petitioner. Further, while Petitioner is not actively being held pursuant to the county detainer in this case, the obvious implication remains

conspiracy to commit a felony, one count of murder, and one count of robbery in the first degree, after a mistrial was declared in the first trial. Initially, the Petitioner asserted three grounds for relief, but for reasons discussed in the PF&R and below, only one is relevant to this opinion. In particular, the Petitioner asserted that his "mistrial bars retrial due to double jeopardy" because a "manifest necessity" was not properly found by the Circuit Court. (Document 1 at 13-15).

The Petitioner asserts that his detention, at least partially due to the pending retrial, violates the Constitution or the laws of the United States. After the Petitioner's jury trial had commenced in September 2019, he discovered the existence of exculpatory evidence. When confronted, the State acknowledged the existence of the exculpatory evidence and disclosed it to the Petitioner at that point. After the Petitioner reviewed some of the files over the weekend, he requested that the court dismiss the action, arguing that the state had violated *Brady v. Maryland* through its late disclosure of exculpatory evidence. The trial court denied the motion, and instead allowed a continuance for the Petitioner's counsel to investigate the exculpatory evidence. After initial review by counsel revealed the need for further investigation, the Petitioner moved again for dismissal, or, at minimum, a further continuance. The State objected to the continuance, and requested a mistrial instead, which the trial court granted.

After the mistrial, the Petitioner filed a motion to dismiss the indictment arguing that further proceedings would violate his Fifth Amendment rights under the Double Jeopardy Clause. The trial court denied the motion. The Petitioner then petitioned the West Virginia Supreme Court of Appeals ("WVSCA") for a writ of prohibition to prevent a second trial. In a three-sentence

---

that upon release or parole from the active sentence, the Petitioner is subject to immediate arrest and pre-trial detention in this matter. Thus, the Court will construe the Petitioner as a pre-trial detainee in *State v. Saunders,* Criminal No. 17-F-26 such that 28 U.S.C. § 2241 is the appropriate remedy.

order containing no analysis, the WVSCA denied the petition. (Document 26-20.) Both the Petitioner and Respondent attest that this exhausted available state remedies. (Document 31 at 9-10; Document 27 at 17.) The Petitioner now requests that this Court grant his motion, and order the cessation of the "criminal action in accordance with constitutional protections of the Fifth Amendment to the Constitution and Article 3, Section 5 of the West Virginia Constitution which protect individuals from and against double jeopardy." (Document 1 at 8.)

## STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## DISCUSSION

Magistrate Judge Aboulhosn properly classified the Petitioner's claim as one brought pursuant to 28 U.S.C. § 2241 despite previous questions regarding which statutory vehicle was appropriate. (PF&R at 17.) Pursuant to the *Memorandum Opinion and Order* (Document 16), Judge Aboulhosn examined the Petitioner's double jeopardy claim. Finding that a state's irreparable violation of a petitioner's Fifth Amendment Double Jeopardy rights is an

"extraordinary circumstance" that warrants federal court intervention, he determined that application of *Younger* abstention would hinge on whether a second criminal trial would constitute a violation of the Petitioner's double jeopardy rights. (PF&R at 17-19.)

Upon consideration, Judge Aboulhosn concluded that "manifest necessity" did not exist to justify the trial judge granting a mistrial, and therefore, jeopardy attached and retrial on the same charges would violate the Petitioner's double jeopardy rights. (PF&R at 22, 27-28.) Judge Aboulhosn found that because the issue giving rise to the declared mistrial was spurred by an alleged *Brady* violation—prosecutor error—a higher level of scrutiny should be applied to the finding of "manifest necessity." Further, he found that the evidence disclosed after the trial had commenced was indeed exculpatory, and as such, any needed delay in the trial was caused by the State's failure to timely provide required disclosures to the defendant. In granting the mistrial, Judge Aboulhosn found that the trial court did not exercise "sound discretion" and did not adequately consider either less drastic alternatives to a mistrial, or the prejudice to the Petitioner. He also found that when presented with an additional motion to dismiss following the granting of the mistrial, the trial court again failed to exercise "sound discretion" in considering the compelling double jeopardy concerns of the Petitioner. Accordingly, Judge Aboulhosn found that the Petitioner's double jeopardy rights will be violated by a second trial, and due to this violation, federal intervention is appropriate.

The Respondent objects broadly to the recommendation that the Respondent's *Motion to Dismiss and Response to Motion for Injunctive Relief (*Document 26) be denied and that criminal charges against the Petitioner cease. Specifically, Respondent objects to Judge Aboulhosn's determination that the trial judge did not exercise "sound discretion" in declaring a mistrial.

Further, he objects to the finding that the record did not demonstrate the "manifest necessity" required to justify a mistrial nor that "the ends of justice would have been defeated without granting of a mistrial." (Document 34 at 1-2). The Respondent argues that the Magistrate Judge gave inadequate deference to the judicial determination of "manifest necessity" for granting the mistrial. *Id.* He asserts that in following appropriate procedure and giving proper consideration, the trial judge exercised "sound discretion." Additionally, the Respondent urges the Court to consider a Ninth Circuit case, *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008), asserting that it is analogous and instructive in the present case. Thus, he argues, the trial court should be accorded special deference and the PF&R should be rejected.

Despite some confusion throughout the case, 28 U.S.C. § 2241 is the proper statutory vehicle for the Petitioner's petition. This statute provides for a federal remedy when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). While § 2241 does not contain the same provision requiring exhaustion of state remedies as does § 2254, the Court notes that in the interest of comity, it is still generally expected that constitutional claims be presented in state court before seeking federal relief. Here, with respect to the double jeopardy claim, it is undisputed that the Petitioner has exhausted all available state remedies prior to the commencement of a second trial. (Document 31 at 9-10; Document 27 at 17.). Thus, despite the lack of a formal exhaustion requirement, the Petitioner has, in fact, exhausted his state remedies with regard to the double jeopardy claim.

In addition to a lack of an explicit exhaustion requirement, § 2241 also does not contain an explicit provision outlining the required level of deference to be given to the state court. Because of this, in the § 2241 framework, the "special deference" typically accorded to state court

6

judgments under § 2254 is inapplicable. *Seay v. Cannon*, 927 F.3d 776, 780 (4th Cir. 2019).[2] Therefore, while the trial court is owed some deference by this Court, that deference is not unlimited, and the Court must be satisfied that the trial judge exercised "sound discretion" in finding that manifest necessity existed for the declaration of a mistrial. *Gilliam v. Foster,* 75 F. 3d 881, 894 (4th Cir. 1996) (citing *Arizona v. Washington*, 434 U.S. 497, 514 (1978)). The Court conducts the remaining analysis with that deference in mind.

Within the context of § 2241, pretrial detainees requesting relief in Federal Court must demonstrate both exhaustion of state remedies and that the claim presents "special circumstances" justifying federal intervention. *Brazell v. Boyd,* 991 F. 2d 787 (Table), *1 (4th Cir. 1993) *(*citing *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 489 (1973)). Absent the existence of special circumstances, federal courts are directed to abstain from interfering with ongoing state proceedings or enjoining state criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 43 (1971); *see Jones v. Perkins,* 245 U.S. 390, 391 (1918) ("It is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial procedure should be followed, and habeas corpus should not be granted in advance of a trial."). *Younger's* abstention mandate may only be disregarded in limited circumstances*. Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006). One such circumstance where federal intervention may be warranted is when "extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Id.* (quoting *Kugler v. Helfant,* 421 U.S. 117, 124 (1975) (internal quotation marks omitted)).

---

[2] In *Seay*, the Fourth Circuit joined the First, Fifth, Sixth, Ninth, and Tenth circuits in drawing this distinction in the level of deference required in a § 2241 petition. *See Phillips v. Court of Common Pleas*, 668 F.3d 804, 810 (6th Cir. 2012); Martinez *v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885–86 (9th Cir. 2004); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918, 125 S.Ct. 1640 (2005).

The Fourth Circuit has clearly articulated that the double jeopardy context may present that extraordinary circumstance because a portion of the clause's protections are "irreparably lost" if an individual with a valid claim is "'forced to endure a second trial before seeking to vindicate their constitutional rights at the federal level.'" *Nivens,* 444 F.3d at 241 (quoting *Younger*, 401 U.S. at 46). As other courts have considered this question, a second trial in violation of a defendant's double jeopardy rights has emerged as a "preeminent example" of a case where the threat of immediate and irreparable injury could justify pretrial federal intervention. *Gilliam*, 75 F.3d at 904 (collecting cases). However, a party may only avoid *Younger*'s abstention mandate when it shows that the second trial would present a "substantial likelihood of an irreparable double jeopardy violation." *Nivens*, 444 F.3d at 242 (quoting *Nivens v. Gilchrist*, 319 F. 3d 151, 159 (4th Cir. 1993) (internal quotation marks omitted)).

Thus, the inquiry next turns to whether the alleged double jeopardy violation is in fact clear, immediate, and irreparable. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be twice put in jeopardy of life or limb" for the same offense. U.S. Const. Amend. V. The clause's prohibition is "not against being twice punished, but against being twice put in jeopardy." *Downum v. United States*, 372 U.S. 734, 735 (quoting *United States v. Ball*, 163 U.S. 662, 669 (1896)). In the jury trial context, jeopardy attaches upon the empaneling of the jury. As a result, a defendant has the right, subject to relatively few exceptions, to have his trial completed by a particular jury once it is empaneled. *United States v. Shafer,* 987 F.2d 1054, 1057. "Those exceptions apply only when the defendant's right is outweighed by 'the public's interest in fair trials designed to end in just judgments.'" *Seay*, 927 F.3d at 781 (quoting *Shafer*, 987 F.2d at 1057). Therefore, if the defendant objects to a motion for

mistrial, as the Petitioner did in this case, the government may only retry him if the mistrial was required by "manifest necessity." *Id.* (quoting *Arizona*, 434 U.S. at 505). Absent that manifest necessity, even commencing a second trial would present that clear, immediate, and irreparable injury justifying the exception to *Younger*-abstention.

To contextualize the lens through which the motions for mistrial, continuance and dismissal were made, as well as the finding of "manifest necessity," the first step is analyzing the alleged underlying violation. The file turned over to the Petitioner in the middle of his criminal trial was exculpatory *Brady* material and thus should have been provided to the Petitioner prior to trial and prior to the jury being empaneled. (Document No. 26-6). The files contained information of a witness stating that someone other than the Petitioner had committed the crime with which he was charged. *Id.* By disclosing the file only after the trial had already commenced and the Petitioner had specifically requested it, the Respondent violated both the letter and the spirit of *Brady*'s requirement. Both the trial court and the Respondent reason that the "late disclosure" was not willful and was not an "intentional violation of *Brady*". However, these explanations are both immaterial and unconvincing. (Document 26-5, p. 3-10). First, the relevant material was not turned over until the jury had been empaneled, the trial was underway, and the state had presented a significant portion of its case. If this is merely "late disclosure," the Court strains to find how much later the disclosure could have been. Given that jeopardy attaches at the time the jury is empaneled, it is difficult to believe that exculpatory disclosures after that point are somehow merely "late." Additionally, the relevant file was clearly exculpatory evidence that required disclosure under *Brady*. The file in question contained exculpatory information directly relevant to the Petitioner's criminal action, and the same investigatory officer was involved in both the

9

Petitioner's case and the case from which the exculpatory file emerged.³ Therefore, the state either knew or should have known the exculpatory nature of this file well before the jury was empaneled and jeopardy attached.⁴ Further, whether the *Brady* violation was intentional is substantively immaterial. As the Supreme Court held, bad faith or willfulness is simply not a part of the *Brady* inquiry. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Instead, *Brady* imposes a duty to disclose exculpatory evidence, and the failure to do so violates *Brady*'s mandate. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).

Therefore, because this was, in fact, a clear violation of the *Brady* mandate, the government and ultimately the trial court's burden to justify a mistrial was necessarily heightened. As the Fourth Circuit has held, there is a spectrum of scrutiny to be applied to a finding of manifest necessity depending on the circumstances. *Gilliam*, 75 F.3d at 895. On one end, the prototypical example of manifest necessity comes from a deadlocked jury unable to reach a verdict through no fault of either party. *Id.* There, manifest necessity is easily found, and the finding is given exceptionally wide deference. *Id* On the other end of the spectrum, the strictest level of scrutiny is applied when the government seeks a mistrial to account for prosecutor error or to strengthen its own case. *Id.* A violation of *Brady's* mandate is, at best, prosecutorial error, such that the circumstances are far closer to the stricter end of the spectrum.

Within that heightened scrutiny, the trial court's finding of manifest necessity is not supported. There is no explicit test for a reviewing court to apply in analyzing whether the trial

---

³ Judge Aboulhosn's *Proposed Findings and Recommendation* includes a more detailed explanation that fully explains how the file in question was exculpatory *Brady* material that the state was required to disclose. (Document 33 at 26 n.3).
⁴ As the Supreme Court explained in *Downum v. United States*, the double jeopardy inquiry looks to the state's knowledge at the time jeopardy attached. 372 U.S. 734, 737-38 (1963).

10

judge exercised sound discretion in granting the mistrial. *Id.* at 894. However, the Fourth Circuit has distilled several factors that the Supreme Court has utilized, in the past, for reviewing courts. These include (1) "whether the trial judge rationally could conclude that granting a mistrial was compelled by manifest necessity or was demanded by the ends of justice; (2) "whether the trial judge acted precipitately"; and (3) "whether the trial judge *expressed concern* regarding the possible double jeopardy consequences of an erroneous declaration of mistrial, heard *extensive* arguments on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial." *Gilliam*, 75 F.3d at 895 (citing *Arizona*, 434 U.S. at 514-16) (emphasis added). The Fourth Circuit has pointed to the final factor—considering reasonable alternatives—as "central" when applying the heightened scrutiny that is applicable to this case. *Seay*, 927 F.3d at 784. In considering alternatives, "[a]ll alternative options must be evaluated, and all reasonable choices exhausted, before the government may reap the benefit of a second opportunity to prove a defendant's guilt." *Id.* If less drastic available alternatives were available and not extensively considered, particularly where the mistrial is ordered due to a mistake or misconduct by the prosecution, manifest necessity likely did not exist. *Shafer*, 987 F.2d at 1057 (citing *Harris v. Young*, 607 F.2d 1081, 1085 n.4 (4th Cir. 1979) ("If obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably.")). Given the record before this court, examination of these factors cuts against a finding of sound discretion.

The record reflects that the trial judge acted precipitately, failed to express concerns about possible double jeopardy considerations, did not hear extensive argument, and gave inadequate consideration to evaluating and exhausting alternative options. The sequence of events is

11

instructive. After the mid-trial discovery of a *Brady* violation, the Petitioner's counsel moved for a dismissal. When the trial judge inquired about whether this was, in fact, a request for dismissal, rather than a mistrial, the Petitioner's counsel confirmed that the request was for a "dismissal and at the very least a continuance" to allow further examination. (Document 26-5, p. 5). The judge then cited case law and procedural rules to hold that the true options were a mistrial or a continuance."[5] *Id.* Both the Petitioner and his counsel clearly indicated their opposition to a mistrial declaration. *Id.* The trial judge then asserted that "we're not dealing with an intentional violation of *Brady*," listened to the Respondent's arguments against dismissal and denied the motion for dismissal. *Id.* at 7-10. At that point, the judge, instead, ordered a continuance of approximately a week as an adequate remedy to address prejudice to the defendant. *Id.* at 10-13. After conducting investigation into the *Brady* material, the Petitioner requested a further continuance as counsel had "confirmed the nature" of the exculpatory testimony and had the need to now interview eight additional witnesses. (Document 31-1). In response, the Respondent moved for a mistrial, arguing that in the preceding week the jury would have forgotten most of the state's case, and further delay would only serve to further prejudice the state. *Id.* Respondent then articulated a concern that there would need to be an evidentiary hearing to see if the evidence discovered was admissible. *Id.* As the Respondent concedes, the trial judge then swiftly granted a mistrial without hearing from defense counsel on the issue. (Document 34, p. 2.)

---

[5] The Court has reviewed the cited caselaw and procedural rules and notes that the judge was not bound to only those options. While *State v. Elswick*, 693 S.E.2d 38 (W.Va. 2010) does not *require* that a motion to dismiss be granted for a discovery violation, it simply says continuance can be an appropriate remedy if it can rectify "any potential disadvantage" from the violation. Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure does state that a court *may* grant a continuance, however, it also states that the court "may enter such other order as it deems just under the circumstances." Therefore, while dismissal may not have been required at that point, the record indicates that the trial judge incorrectly concluded it was not an option and thus the Court will not infer that the judge gave appropriate consideration to the alternative option of dismissal.

12

The Respondent points to the fact that the Petitioner had previously argued in favor of dismissal or continuance, as evidence that he was "heard" on the grant of a mistrial. However, at that time, a mistrial had not been proposed, and was not one of the options. The status quo was either proceeding with the trial, or the grant of the Petitioner's motion to continue. It was only when the state subsequently moved for a mistrial that the issue arose, and it is undisputed that the judge ruled without hearing from the defendant, only allowing an objection to be noted for the record after the fact. This sequence falls well short of the "extensive argument" that precedent requires prior to granting the motion. *See Gilliam*, 75 F.3d at 895. In reaching this conclusion on the mistrial, the judge accepted the Respondent's contention about the potential for the jury to forget the state's case without polling the jury to see if there were any concerns about a further continuance or memory concerns. While the judge certainly is not required to explicitly lay out all his considerations, this Court also need not infer "implicit" considerations that do not appear otherwise supported by the record.[6] Therefore, even if there was vague "implicit" consideration, given the charge to fully "exhaust" any reasonable alternative approaches, an undiscussed consideration falls short. *Seay*, 927 F.3d at 784.

When the trial judge later entered a written order granting the Respondent's motion for a mistrial and explaining its rationale, it discussed the need to eliminate prejudice—including specific reference to the prejudice to the State's case-in-chief, the potential for jury confusion or "attrition to the jury's already strained retention of the evidence," and that "thousands of taxpayer

---

[6] Further, while the Respondent urges this Court to consider that the trial judge noted concern about fairness and "whether either side" could get "a fair shake," given the Petitioner's objection to the mistrial, those statements are less persuasive. The Fourth Circuit has held that the Court should set aside those types of statements as they were not concerns shared by the Petitioner. *Shafer*, 987 F.2d at 1058 ("[W]e must put aside any statements by the district court that the mistrial was partially motivated by concerns of prejudice to the defense. We note that such reservations were not shared by [the defendant] . . . .") (internal citations omitted).

13

dollars have been wasted. . ..." (Document 26-8). At no point does the judge articulate any consideration or awareness that granting a mistrial might deprive the Petitioner of or even implicate his "constitutional right to have the empaneled jury decide [his] guilt." Nor did the judge make any reference to the double jeopardy considerations at play. Thus, there is no indication that he "express[ed] concern" about the double jeopardy implications of declaring the mistrial. After the Petitioner subsequently filed a motion to dismiss the pending retrial raising the double jeopardy issue, the trial judge denied the motion, again without addressing the double jeopardy implications, and simply referring to his previous mistrial order. (Document No. 26-10).

The written order and the record also reveal that the trial judge seemingly did not consider any alternatives to a mistrial aside from the continuance. Further, the court gave particular consideration to the prejudice that further delay could cause to the State's case, notwithstanding that any further delay would have been solely to rectify the State's failure to abide by its discovery obligations in the first place. That stated, there were ample reasonable alternative approaches that, based on the record, the trial judge did not consider or exhaust prior to granting the state the benefit of a second bite of the apple. *See Seay*, 927 F.3d at 784. For instance, the record is devoid of any indication that the trial judge considered inquiring with the jury about whether a further continuance was burdensome, issuing a further "stern warning" to ensure the jurors did not conduct independent research, allowing the State to recall witnesses after the delay, or any other consideration.[7] Thus, the record fails to illustrate that the trial judge met the "central" factor the

---

[7] The Court also notes that the duration of the trial, even with an additional delay to further investigate, would not have been unusually long. Jurors are often asked to recall material presented over several weeks or months in complex trials. At the time the mistrial was granted, the trial and continuance had only encompassed a total of 14 days (September 4, 2019 – September 17, 2019). As the Petitioner correctly identified, both within the Southern District of West Virginia and throughout the country, jurors are often asked to recall far more extensive evidence for far longer than the furors would have in this case. (Document 31 at 19-20) (collecting cases). A further continuance would not, inherently, have placed this jury in a position different than juries routinely face.

14

Fourth Circuit has identified of ensuring "[a]ll alternative options must be evaluated, and all reasonable choices exhausted." *Seay*, 927 F.3d at 784.

The State allowed jeopardy to attach with the awareness that it had *Brady* material in its possession, irrespective of whether they intentionally withheld it. In moving forward with empaneling the jury, the State risked this information coming out after the trial had commenced and a *Brady* violation being found. Understanding this risk, they moved forward with the trial, gambling that a disruption in the proceedings could result in dismissal. Then, in moving for a mistrial against the Petitioner's objection, they risked a later plea of double jeopardy. *See Seay*, 927 F.3d at 782.

The Respondent's argument asks this Court to supplement gaps in the record with what the trial judge must have implicitly considered or what the calculus must have been, urging the Court to essentially construe all aspects of the record in favor of a finding of "sound discretion." Under this heightened scrutiny, the Court declines the request to remedy the record's shortcomings by inserting considerations into the record. As the Supreme Court has explicitly stated, "[w]e resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be unlimited, uncertain, and arbitrary judicial discretion." *Downum,* 372 U.S. at 738.

Of course, a trial judge need not "articulate on the record all factors which informed the deliberate exercise of his discretion." *Arizona,* 434 U.S. at 517. Despite this, finding "manifest necessity" still does require a "high degree" of necessity. *Gilliam*, 75 F.3d at 895. To meet this high degree, when a defendant has voiced an objection to the declaration, a reviewing court must be satisfied that the finding was the result of the "scrupulous exercise of judicial discretion" concluding that the "ends of public justice would not be served by a continuation of the

proceedings." *United States v. Jorn*, 400 U.S. 470, 485 (citing *United States v. Perez,* 22 U.S. 579, 580 (1824)). Based on the record before the Court and the applicable considerations, particularly with respect to the underlying cause of the motion for a mistrial, that high degree of necessity was not met. Ultimately, while there is indeed wide deference given to trial judges, the record indicates that the trial judge did not exercise "sound discretion" in finding "manifest necessity" and therefore, continued deference would be inappropriate.

Finally, the Respondent urges the Court to look to the Ninth Circuit's decision in *United States v. Chapman*, for guidance. 524 F.3d 1073 (9th Cir. 2008). Although *Chapman* also involved an assertedly inadvertent *Brady* violation, the procedural posture was quite different. There, the trial court rejected the prosecution's request for a continuance and granted a mistrial. In granting the mistrial, the trial judge indicated that he was "inclined to dismiss" the case but wanted to give the opportunity to the parties to brief that issue. Ultimately, his inclination was confirmed, and he found that dismissal was appropriate, an action which, if taken in this case, would have eliminated any need for federal intervention. In contrast to the facts and record presented here, the record in *Chapman* includes the trial judge's careful consideration of the prejudice to the defendant, and critically, his concerns about double jeopardy. Further, while a factually analogous case from the Ninth Circuit may have some persuasive authority, the Court must base its analysis and conclusion on the applicable standards and binding precedential authority from the Fourth Circuit and the United States Supreme Court.

Given the conduct which spurred the request for mistrial and the heightened scrutiny this invites, the clear and immediate likelihood of a double jeopardy violation, and the irreparability of that injury should the prosecution continue, the Court finds that this is precisely one of the

exceptional circumstances where federal intervention is required to vindicate essential constitutional protections. As a result, the Respondent's objections should be overruled, and the PF&R should be adopted.

## CONCLUSION

Wherefore, after thorough review, and careful consideration, the Court **ORDERS** that the *Respondent's Objections to Proposed Findings and Recommendation* (Document 34) be **OVERRULED** and that the Magistrate Judge's *Proposed Finding and Recommendation* (Document 33) be **ADOPTED**.

The Court further **ORDERS** that the *Respondent's Motion to Dismiss* (Document 26) be **DENIED,** that the Petitioner's *Petition for a Writ of Habeas Corpus Under 28 U.S.C. §2241* (Document 1) be **GRANTED,** and that the Petitioner's *Motion for Preliminary Injunction* (Document 19) be **DENIED AS MOOT**. The Court **DIRECTS** that further prosecution of the Petitioner on the underlying criminal charges cease, as further prosecution would violate the Petitioner's double jeopardy rights.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 9, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA